FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 27, 2017

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LUIS VALDEZ,<br><br>                    Plaintiff,<br><br>        vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | No. 1:15-CV-03151-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 14, 17 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 14, 17. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 14) and grants Defendant's motion (ECF No. 17).

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-410 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

2  defined generally as the claimant's ability to perform physical and mental work

3  activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

4  404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the

5  analysis.

6       At step four, the Commissioner considers whether, in view of the claimant's

7  RFC, the claimant is capable of performing work that he or she has performed in

8  the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

9  If the claimant is capable of performing past relevant work, the Commissioner

10  must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).

11  If the claimant is incapable of performing such work, the analysis proceeds to step

12  five.

13       At step five, the Commissioner considers whether, in view of the claimant's

14  RFC, the claimant is capable of performing other work in the national economy.

15  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination,

16  the Commissioner must also consider vocational factors such as the claimant's age,

17  education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v);

18  416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

19  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

20  404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

1  work, analysis concludes with a finding that the claimant is disabled and is

2  therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

3      The claimant bears the burden of proof at steps one through four above.

4  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

5  step five, the burden shifts to the Commissioner to establish that (1) the claimant is

6  capable of performing other work; and (2) such work "exists in significant

7  numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2);

8  *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

9      "A finding of 'disabled' under the five-step inquiry does not automatically

10  qualify a claimant for disability benefits."  *Parra v. Astrue*, 481 F.3d 742, 746 (9th

11  Cir. 2007) citing *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)).

12  When there is medical evidence of drug or alcohol addiction, the ALJ must

13  determine whether the drug or alcohol addiction is a material factor contributing to

14  the disability.  20 C.F.R. §§ 404.1535(a), 416.935(a).  In order to determine

15  whether drug or alcohol addiction drug addiction is a material factor contributing

16  to the disability, the ALJ must evaluate which of the current physical and mental

17  limitations would remain if the claimant stopped using drugs or alcohol, then

18  determine whether any or all of the remaining limitations would be disabling.  *Id.*

19  §§ 404.1535(b)(2), 416.935(b)(2).  If the remaining limitations would not be

20  disabling, drug or alcohol addiction is a contributing factor material to the

1  determination of disability.  *Id.*  If the remaining limitations would be disabling,

2  the claimant is disabled independent of the drug or alcohol addiction and the

3  addiction is not a contributing factor material to the disability determination.  *Id.*

4  Plaintiff has the burden of showing that drug and alcohol addiction (DAA) is not a

5  contributing factor material to disability.  *Parra,* 481 F.3d at 748.

### ALJ'S FINDINGS

7          Plaintiff applied for Title II disability insurance benefits and Title XVI

8  supplemental security income benefits on March 16, 2009, alleging onset of

9  disability beginning January 1, 2007.  Tr. 323-32.  The applications were denied

10  initially, Tr. 163-66, and on reconsideration, 170-74.  Plaintiff appeared at a

11  hearing before an administrative law judge (ALJ) on October 7, 2013.[1]  Tr. 100-20.

12  On November 18, 2013, the ALJ denied Plaintiff's claim.  Tr. 18-29.

_____

14  [1] This was the third hearing.  At the first hearing February 7, 2011, Tr. 41-52,

15  psychologist Thomas Knight, Ph.D., testified that Plaintiff should undergo

16  psychological testing due to inconsistencies in the record.  Tr. 51.  The ALJ

17  adjourned the hearing for a consultative examination, in order to perform

18  additional testing, including an MMPI-2, Tr. 51-52, but Plaintiff failed to appear.

19  The ALJ then dismissed Plaintiff's request for a hearing for constructive

20  abandonment, Tr. 62, 129-30; and the Appeals Council ordered remand for another

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

At the outset, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. Tr. 21. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, January 1, 2007. Tr. 21. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease, lumbar spine; diabetes; hypertension; obesity; personality disorder, not otherwise specified; psychotic disorder, not otherwise specified; and substance addiction in remission. Tr. 21. The ALJ found substance abuse addiction is not material to the non-disability determination, in part because Plaintiff has had periods of sobriety and has been able to complete a wide range of activities.[2] Tr. 21. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 21. The ALJ then concluded that Plaintiff has the following RFC:

---

hearing. Tr. 131-33. A second hearing was conducted February 9, 2012. Tr. 55-97. The ALJ again denied Plaintiff's claim. Tr. 138-50. The Appeals Council accepted review and remanded for a third hearing. Tr. 158-62.

[2] The ALJ found Plaintiff is not disabled; accordingly, no further DAA materiality analysis was required. *See Parra*, 481 F.3d at 746 (an ALJ must proceed with the DAA analysis if Plaintiff is found disabled and substance abuse is indicated).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

[T]he claimant has the residual functional capacity to perform medium work as defined in [the regulations], including: He can lift occasionally 50 pounds, and frequently lift/carry 25 pounds; can sit, stand/walk for at least six hours of an 8 hour workday with usual breaks; he has an unlimited ability to push and/or pull, including operation of hand and foot controls within his limits for lifting and carrying; can frequently climb ramps and stairs; can occasionally climb ladders, ropes and/or scaffolding; can frequently balance and kneel; can occasionally stoop; can frequently kneel, crouch, and crawl; should avoid working with hazardous machinery or at unprotected heights; can understand, remember and carry out simple instructions as jobs classified as SVP level 1 or 2/unskilled work; can make judgments on simple, work-related decisions; can respond appropriately to supervision and co-workers, and deal with occasional changes in his work environment that requires only occasional exposure to or interaction with the general public.

Tr. 24.

At step four, the ALJ found that Plaintiff has no past relevant work.  Tr. 27. At step five, the ALJ found that, considering Plaintiff's age education, work experience, RFC, and the vocational expert's testimony, there are jobs in significant numbers in the national economy that Plaintiff could perform, such as laundry sorter, hand packager, and machine feeder.  Tr. 28.  On that basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act.  Tr. 28-29.

On June 29, 2015, the Appeals Council denied review, Tr. 1-4, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383 (c)(3); 20 C.F.R. §§ 416.1481, 422.210.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical evidence; and

2. Whether the ALJ properly discredited Plaintiff's symptoms claims. ECF No. 14 at 6.

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff faults the ALJ for discrediting the medical opinions of (1) treating psychiatrist Philip Rodenberger, M.D.; (2) seven "non-acceptable [treating] medical sources"; and (3) examining psychologist Tae-Im Moon, Ph.D. ECF No. 14 at 6-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-31(9th Cir. 1995)).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

teachers, social workers, and other non-medical sources.  20 C.F.R. §§ 404.1513(d), 416.913(d).  The ALJ need only provide "germane reasons" for disregarding an "other source" opinion.  *Molina*, 674 F.3d at 1111.  However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work."  *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

   *1. Dr. Rodenberger*

   Plaintiff faults the ALJ for failing to credit the January 2010 opinion of treating psychiatrist Philip Rodenberger, M.D.  ECF No. 14 at 6-10.  Dr. Rodenberger opined that, even without substance abuse, Plaintiff was severely limited in thirteen areas of functioning.  Tr. 7111-13.  The ALJ gave this opinion little weight.  Tr. 26.  Because Dr. Rodenberger's opinion was controverted, in part, by examining psychologist Roland Dougherty, Ph.D., Tr. 630-35, the ALJ must provide specific and legitimate reasons that are supported by substantial evidence to reject it.  *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-831). This Court finds the ALJ provided specific and legitimate reasons.

   *a. Unsupported by the record - treating source*

   First, the ALJ found that Dr. Rodenberger's opinion conflicts with the record.  Tr. 26.  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

explanation provided  in the opinion, and the consistency of the medical opinion

with the record as a whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir.

2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  An ALJ may discredit a

treating physician's opinions that are unsupported by the record as a whole or by

objective findings.  *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195

(9th Cir. 2004).  The record supports the ALJ's reasoning.  For example, the ALJ

found that GAF scores of 55-65[3] (indicating moderate to mild symptoms or

limitations), by several other treating and examining sources are generally more

credible, and more consistent with the record overall, than Dr. Rodenberger's 2010

opinion.  The ALJ found, for instance, that in March 2008, treatment provider

Suzanne Rodriguez, MSW, assessed a GAF of 60, reflecting only moderate

symptoms or impairments.  Tr. 26 (citing Tr. 489)  The ALJ also found that, at this

appointment, Plaintiff told Ms. Rodriguez he was able to manage his ongoing

---

[3] A Global assessment of Functioning of 55 indicates moderate symptoms or

limitations, while a GAF of 65 indicates mild symptoms or some difficulty in

social, occupational, or school functioning ... but generally functioning pretty well,

has some meaningful interpersonal relationships.  American Psychiatric Ass'n,

*Diagnostic and Statistical Manual of Mental Disorders* (4th ed., Text Revision

2000) (DSM-IV-TR) at 34.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

auditory hallucinations,[4] and, although he experienced occasional mild depression, he further reported that prescribed medication had decreased his depressive symptoms.  Tr. 26 (citing Tr. 489).  As another example, the ALJ found that a month later, in April 2008, Plaintiff told Ms. Rodriguez that he managed auditory hallucinations "by simply ignoring them," and specifically denied symptoms of depression or anxiety.  Tr. 26 (referring to Tr. 486).  At the same appointment, Plaintiff further reported that he knew that the voices he hears are not real and that is "why I can control them."  Tr. 486.  Ms. Rodriguez assessed a GAF of 65, indicating only mild symptoms or limitations.  Tr. 26 (citing Tr. 486).  The ALJ is correct that these records are inconsistent with Dr. Rodenberger's opinion, *i.e.,* that Plaintiff has marked mental health limitations, including a GAF as low as 50.[5]  Tr. 26 (citing Tr. 562).  The ALJ found Dr. Rodenberger's opinion was entitled to little

_____

[4] Plaintiff alleges he suffers auditory hallucinations.  In June 2009, he told examining psychologist Dr. Dougherty that these hallucinations began when he drank and took drugs.  Tr. 26 (citing Tr. 631).  At the same time, Plaintiff reported that he began hallucinating when he took methamphetamine.  Tr. 632.  Plaintiff has reported that this began in 2001. Tr. 1502.

[5] A GAF score of 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning.  *DSM-IV-TR,* 34.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

weight because it "conflicts with the comprehensive record as outlined above." Tr.
26 (citing, in part, Ms. Rodriguez's records at Tr. 486). The ALJ further found Dr.
Rodenberger opined that, given Plaintiff's history of drug use, it was difficult to
"distinguish schizophrenia from drug-induced psychosis." Tr. 26; *see* Tr. 562 (at
Plaintiff's first appointment with Dr. Rodenberger, in November 2007, Plaintiff
reported that he heard voices[6]). Because the record is replete with evidence of
substance use, and Dr. Rodenberger consistently pondered about the effects, the
ALJ properly considered the possibility that some of the limitations Dr.
Rodenberger assessed were caused by substance abuse rather than mental
impairments.[7]

---

[6] At this appointment, Dr. Rodenberger also noted that Plaintiff was alert, oriented,
and cooperative; speech was coherent and goal directed; and affect was "a bit
constricted but not unpleasant." Tr. 562.

[7] *See, e.g.* Tr. 526 (in May 2008, Donald Hill, M.D., opined Plaintiff's that diabetes
was exacerbated by a recent alcohol binge); Tr. 564 (in July 2008, Plaintiff told Dr.
Rodenberger that he had relapsed on alcohol in March 2008); Tr. 466 (in October
2008, Plaintiff reported that he drank whiskey two days ago; testing for
cannabinoids returned positive); Tr. 887 (in September 2009, Plaintiff was
hospitalized for three days after drinking alcohol); Tr. 1413 (in January 2011, Mr.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

Dr. Rodenberger's January 2010 opinion is inconsistent,[8] when he assessed

thirteen severe limitations,[9] with his February 2009 treatment notes indicating

---

Moen noted current substance abuse); Tr. 1478 (in June 2011, Plaintiff denied drug

use but tested positive for methamphetamine, cocaine, and cannabinoids); Tr.

1804-05 (in January 2012, Plaintiff denied drug use, but tested positive for

cannabinoids and methamphetamine). The ALJ noted that in October 2012,

Plaintiff tested positive for methamphetamine, Tr. 21 (citing Tr. 1914), and was

terminated from treatment. Tr. 1917. At the current hearing, Plaintiff testified that

he relapsed a month earlier, in September 2013, when he used marijuana and

methamphetamine. Tr. 104-05.

[8] Plaintiff did not see Dr. Rodenberger from July 2009 until January 2010. Tr. 763.

At the latter appointment in 2010, Dr. Rodenberger remarked that, compared with

July 2009, he saw "a fairly remarkable improvement"; he opined perhaps this was

due to Plaintiff "taking the medication more reliably" and remaining "clean with

respect to his past polysubstance abuse." Tr. 793. At the prior appointment in

July, Plaintiff had rated his functioning at 20/100; however, Dr. Rodenberger

observed that due to an error, the pharmacy had not filled two of Plaintiff's

medications. Tr. 666 (referring to Tr. 794).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

Plaintiff reported that he was doing better and rated his own functioning at 90/100. Tr. 26; Tr. 559.  Because an ALJ may discount an opinion that is brief, conclusory, and inadequately supported by clinical findings, *Bray*, 554 F.3d 1219, 1228 (9th Cir. 2009), or is inconsistent with a claimant's reported functioning,  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-602 (9th Cir. 1999), the ALJ provided specific reasons for giving Dr. Rodenberger's opinion limited weight.

   *b. Unsupported by the record - examining source*

   Next, the ALJ rejected Dr. Rodenberger's opinion because it was inconsistent with the opinion of examining psychologist Roland Dougherty, Ph.D.,

---

[9] As noted *infra* with respect to the ALJ's credibility assessment, Dr. Rodenberger assessed, for example, a marked limitation in the ability to use public transportation, but this is contradicted by Plaintiff's admitted ability to use public transportation.  Tr. 25-26; *compare* Tr. 713 (in January 2010, Dr. Rodenberger opined Plaintiff was *markedly* limited in the ability to travel in unfamiliar places or use public transportation) *with* Tr. 387-88 (in April 2009, Plaintiff reported that he used public transportation to go to the library, appointments, and other places as needed).  Because Plaintiff's functioning was inconsistent with Dr. Rodenberger's assessed limitations, the ALJ provided another specific, legitimate reason for affording his opinion limited weight.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

1  who assessed only mild symptoms.  Tr. 26 (citing Tr. 635) (assessing a GAF 65).

2  An opinion that is consistent with the record overall is entitled to greater weight

3  than one that is inconsistent.  *See Orn*, 495 F.3d at 631 ("factors relevant to

4  weighing any medical opinion include the amount of relevant evidence that

5  supports the opinion and the quality of the explanation provided; the consistency of

6  the medical opinion with the record as a whole") (citation omitted).

7       The ALJ found that in June 2009, as noted, Dr. Dougherty assessed a GAF

8  of 65, indicating only mild symptoms or limitations (Tr. 635), as had treatment

9  provider Ms. Rodriguez in April 2008.  Tr. 26 (citing Tr. 486).  In addition, Dr.

10  Dougherty noted that Plaintiff described himself as functioning well in nearly

11  every area of his life; the only exception was brief, intermittent depressive

12  episodes.  Tr. 26 (citing Tr. 635).  Further, Plaintiff reported that he took part in

13  physical activities, helped around the house, and walked for long distances.  Tr. 26

14  (citing Tr. 635).  Dr. Dougherty opined that Plaintiff's thinking was logical and

15  goal directed; moreover, Plaintiff responded rationally to Dr. Dougherty's

16  questions.  *Id*.  Plaintiff's social skills appeared at least fair; Dr. Dougherty opined

17  that Plaintiff "socializes easily."  Tr. 26 (citing Tr. 635).  The ALJ also found, as

18  another example, that although Plaintiff had complained of poor concentration (Tr.

19  110, 112, 583), he told Dr. Dougherty that he watched television and played video

20  games for long periods of time, with good concentration, and read the newspaper

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

daily for thirty minutes.  Tr. 26 (citing Tr. 634-35).  These activities are clearly

consistent with mild rather than severe limitations.  Most significantly, the ALJ

found Dr. Dougherty opined that Plaintiff's "reported hallucinations do not appear

to interfere with his activities."  Tr. 25 (citing Tr. 630, 633, 635).  Dr. Dougherty

based this opinion on Plaintiff's report that audio hallucinations began in 2001, Tr.

630; yet Plaintiff told Dr. Dougherty that he was able to work without difficulty as

a child care provider for years[10] thereafter.  Tr.  633.  The ALJ properly gave Dr.

Dougherty's opinion greater weight because, unlike Dr. Rodenberger's, it was both

supported with clinical findings and consistent with Plaintiff actual functioning.

*See, e.g.,* Tr. 633 (Dr. Dougherty performed a MSE that yielded essentially normal

results); Tr. 630 (Plaintiff told Dr. Dougherty that his hallucinatory symptoms had

not prevented him from working).  Because the ALJ may discount an opinion that

is unsupported by clinical findings or is inconsistent with the record as a whole,

*Batson*, 359 F.3d at 1195, and may discount an opinion that is inconsistent with a

claimant's reported functioning, *Morgan*, 169 F.3d at 601-602, the ALJ provided

additional specific and legitimate reasons for affording Dr. Rodenberger's opinion

limited weight.

---

[10] Plaintiff told Dr. Moon that he worked as a child care provider from 1996-2006,

and this job ended when his employer moved.  Tr. 1718.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

*3. Unsupported by the record - reviewing sources*

Third, the ALJ found that the opinions of reviewing sources, unlike Dr. Rodenberger's, were consistent with the records of other treating and examining sources, and with Plaintiff's activities.  Tr. 26.  While the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989).  For example, the ALJ found Mary Gentile, Ph.D., reviewed the record in June 2009, and opined that Plaintiff was cognitively intact and capable of simple and well-learned tasks.  Tr. 26 (citing Tr. 636-49, 650-53).  In September 2009, Edward Beaty, Ph.D., reviewed the record and agreed with Dr. Gentile's opinion.  Tr. 709.  The ALJ found, for example, that the reviewing psychologists' opinions of Plaintiff's functioning are consistent with his reported activities, *i.e.,* Plaintiff reported that he handled money adequately; used public transportation; shopped; regularly went to the library, post office and park; played video and card games; played light, non-contact sports; read the newspaper; and maintained a relationship with his girlfriend.  Tr. 25 (citing Tr. 386-90); *see also* Tr. 632 (Plaintiff told Dr. Dougherty he has been with his girlfriend for seventeen years).  This range of activities

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20

1    indicates no more than mild limitations and refutes D. Rodenberger's opinion.

2    Because the reviewing psychologists' opinions are consistent with other

3    independent evidence, including the opinions of Dr. Dougherty and Ms.

4    Rodriguez, and with Plaintiff's reported activities, the ALJ provided another

5    legitimate and specific reason for giving Dr. Rodenberger's opinion less weight.

6

7        *4. Lack of supporting evidence*

8        The ALJ further found that Dr. Rodenberger did not cite to specific,

9    objective findings to support his opinion. Tr. 25-26. An ALJ may discredit a

10   treating physician's opinions that are unsupported by the record as a whole or by

11   objective medical findings. *Batson,* 359 F.3d at 1195. Here, contrary to Dr.

12   Rodenberger's assessed severe and marked limitations, the ALJ noted test results,

13   such as MSEs, have largely been normal. Tr. 26. For example, in October 2007,

14   treatment provider David Hibbs, ARNP, reported that Plaintiff was alert, oriented,

15   and there was no unusual anxiety or evidence of depression. Tr. 26 (citing Tr.

16   552); *see also* Tr. 524 (in August 2008, Mr. Hibbs again reported Plaintiff was

17   alert and oriented). As another example, in April through June 2008, treatment

18   provider Ms. Rodriguez opined Plaintiff was oriented "times 3"; his thoughts were

19   concrete and organized; and, among other good test results, Plaintiff completed a

20   3-step command easily. Tr. 26 (citing Tr. 482, 484, 599). As a further example, in

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21

June 2009, Dr. Dougherty noted that Plaintiff's MSE results were essentially normal.  Tr. 26 (citing Tr. 633).[11]  Because an ALJ may give less weight to opinions that are inadequately supported by clinical findings, *Bray,* 554 F.3d at 1228, the ALJ provided another specific reason for giving Dr. Rodenberger's opinion less weight.

Last, the ALJ gave Dr. Rodenberger's opinion little weight because he "uses vague phrases" to describe Plaintiff's condition, such as "I consider him to be stably unstable."  Tr. 26 (citing Tr. 559).  An ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.  *Bray,* 554 F. 3d at 1228.  As noted, the ALJ relied on largely normal MSE results, Plaintiff's functioning as assessed by Dr. Dougherty and Ms. Rodriguez, the opinions of reviewing psychologists Dr. Gentile and Dr. Beaty, as well as Plaintiff's own reported inconsistent activities, when he gave Dr. Rodenberger's dire opinion limited weight.  Tr. 25-26.  Regardless of whether Dr. Rodenberger's use of the phrase "stably unstable" was vague, the Court finds that the ALJ's analysis is based on

---

[11] *See also* Tr. 774 (in December 2010, treating physician Phillip Dove, M.D., opined Plaintiff was alert and oriented.  No unusual anxiety or evidence of depression were noted).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22

several specific, legitimate reasons supported by the record.  Given all of the fully

supported reasons for rejecting Dr. Rodenberger's opinion, the Court finds any

error by the ALJ in relying on perceived "vagueness" is harmless.  *See Tommasetti*

*v. Astrue*, 533 F.3d 1035, 1043 (9th Cir. 2008) (error that is inconsequential to the

ultimate nondisability determination is harmless error) (internal citations omitted).


### 2. DSHS Opinions

Plaintiff faults the ALJ's assessment of the evidence of mental limitations

offered by five treating "other sources," as well as the opinion of an examining

psychologist, Tae-Im Moon, Ph.D.  ECF No. 14 at 10-13.  An ALJ must only

provide germane reasons for rejecting the opinion of an "other source."  SSR 06-

03p, 2006 WL 2329939 at *2, *Molina*, 674 F.3d at 1111.

### a. Russell Anderson, LCSW

On September 23, 2008, treatment provider Russell Anderson, LICSW,

evaluated Plaintiff.  Tr. 583-588.  He diagnosed psychotic disorder, not otherwise

specified, and depressive disorder, not otherwise specified.  Tr. 26 (citing Tr. 586).

Mr. Anderson opined that Plaintiff has a marked mental limitation (hallucinations)

and ten moderate mental limitations.  Tr. 26 (citing Tr. 586-87).  The ALJ gave this

opinion very little weight.  Tr. 26.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 23

1    The ALJ found that Mr. Anderson's opinion was inconsistent with the

2    record.  Tr. 26 (citing Tr. 584).  Because the ALJ may discount an opinion that is

3    conclusory, brief, and unsupported by the record as a whole, or by objective

4    medical findings, *Batson*, 359 F.3d at 1195, this is a germane reason.  For example,

5    the ALJ found Mr. Anderson's September 2008 opinion, that Plaintiff suffers from

6    "marked" mental limitations due to hallucinations, Tr. 584, was contradicted by the

7    "longitudinal record," which includes Dr. Dougherty's 2009 evaluation.  An ALJ

8    may properly give greater deference to the opinion of an acceptable source than to

9    an "other source."  *Molina*, 674 F.3d at 1111 (citing *Valentine v. Comm'r of Soc.*

10   *Sec. Admin.*, 574 F. 3d 685, 692 (9th Cir. 2009).  Here, contrary to Mr. Anderson's

11   opinion, the ALJ found Dr. Dougherty opined that Plaintiff's "reported

12   hallucinations do not appear to interfere with his activities."  Tr. 26 (citing Tr.

13   635).  This was a germane reason.

14   The ALJ next found that Mr. Anderson's opinion "conflicts with the

15   comprehensive record," Tr. 26, because it is inconsistent with Plaintiff's reported

16   functioning.  Tr. 25 (citing Tr. 384-390).  An ALJ may discount an opinion that is

17   inconsistent with a claimant's reported functioning.  *Morgan*, 169 F.3d at 601-602.

18   The ALJ found that while Mr. Anderson opined Plaintiff suffered hallucinations to

19   a "marked" degree, Tr. 584, and Plaintiff complained that he heard voices and

20   responded to external stimuli, Tr. 585, Plaintiff also reported that he lived in a

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 24

1  shelter with others; frequently went outside; used public transportation; shopped in

2  stores; visited the post office, library, park, and doctors regularly; got along well

3  with others; handled stress very well; and had a girlfriend.  Tr. 25 (citing Tr. 384-

4  391); *see also* Tr. 634 (Plaintiff told Dr. Dougherty he read the newspaper every

5  day for thirty minutes).  This wide range of activities is inconsistent with Mr.

6  Anderson's much more limiting assessment.

7       Plaintiff contends the ALJ relied on Mr. Anderson's status as a non-

8  acceptable source as a reason to discredit his opinion, as well as to discredit the

9  opinions of the other non-acceptable sources (Mr. Clark, Ms. Gray, Mr. Moen, and

10  Ms. Vaagen (mental limitations) and Ms. Campbell, Ms. Rutter, and Ms. Spitler

11  (physical limitations).  ECF No. 10-12, citing Tr. 26.  However, because an ALJ

12  may properly give greater deference to the opinions of "acceptable" sources than to

13  "other sources," *see Molina*, 674 F.3d at 1111, the ALJ did not err.  The ALJ

14  provided germane reasons for rejecting Mr. Anderson's, and others' opinions.

15       *b. Christopher Clark, M.Ed.*

16       Treatment provider Christopher Clark, M.Ed., evaluated Plaintiff in March

17  2008 and February 2009.  Tr. 577-82; 589-94.  In his first opinion, Mr. Clark

18  diagnosed psychosis, not otherwise specified; somatoform disorder, not otherwise

19  specified; and rule out schizophrenia, paranoid type.  Tr. 578.  In addition, Mr.

20  Clark assessed multiple marked and moderate limitations, and opined that

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 25

Plaintiff's prognosis was poor.  Tr. 578-80.  The ALJ gave this opinion very little weight.  Tr. 26 (citing Tr. 578-79).

Mr. Clark evaluated Plaintiff again in February 2009.  Tr. 589-94.  Mr. Clark changed his diagnoses to schizoaffective disorder, depressed type; polysubstance dependence, in sustained remission; and rule out schizophrenia, undifferentiated type.  Tr. 590.  Mr. Clark again assessed several marked and moderate mental limitations.  Tr. 590-91.  Mr. Clark further opined that Plaintiff's employability factors had not improved.  Tr. 592.  The ALJ also gave this opinion very little weight.  Tr. 26 (citing Tr. 592).

The ALJ essentially rejected Mr. Clark's opinion, finding that other longitudinal records refuted the presence of such marked limitations.  Tr. 26.  An ALJ may discredit an opinion that is brief, conclusory, and unsupported by the record as a whole, or by objective findings.  *Batson*, 359 F.3d at 1195.  As previously noted, the longitudinal record the ALJ relied on included, in part, the opinions of examining psychologist Dr. Dougherty and treatment provider Suzanne Rodriguez, MSW.  Tr. 26 (citing Tr. 486) (in April 2008, Plaintiff told Ms. Rodriguez that he managed the voices by ignoring them; she assessed a GAF of 65); (in June 2009, examining psychologist Dr. Dougherty also assessed a GAF of 65, indicating only mild mental health limitations; he also noted Plaintiff was able to work in the past despite hearing voices).  Because the ALJ may properly credit

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 26

an acceptable source over an "other source," *Molina*, 674 F.3d at 1111, the ALJ's

reason is germane.

### c. Jody Gray, ARNP

In January 2012, Ms. Gray opined that Plaintiff may need to miss three or

more days of work per month due to "lower back pain and psychosis."  Tr. 1689.

The ALJ gave Ms. Gray's opinion as to Plaintiff's mental limitations very little

weight, Tr. 26, because it conflicted with the opinion by an acceptable source,

examining psychologist Dr. Dougherty (Tr. 630-35, who noted Plaintiff had been

able to work despite allegedly hearing voices), reviewing psychologists Dr. Gentile

(Tr. 636-52) and Dr. Beaty (Tr. 652, 709, who opined Plaintiff is cognitively intact,

capable of simple and well-learned complex tasks, and able to have superficial

public and co-worker contact), and by treating source Ms. Rodriguez.  Tr. 486.  As

noted, Ms. Rodriguez assessed a GAF of 65 in April 2008 and found Plaintiff

admitted that he knows the voices he hears are not real, and he is able to control

them by ignoring them.  Tr. 486.  Because an ALJ may properly give greater credit

to acceptable medical source opinions than to "other source" opinions, *Molina,* 674

F.3d at 1111, and to opinions that are consistent with the record as a whole,

*Batson*, 359 F.3d at 1195, the ALJ's reasons for rejecting Ms. Gray's more extreme

limitations are germane.

### d. Dick Moen, MSW

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 27

1    In October 2007, treatment provider Mr. Moen evaluated Plaintiff.  Tr. 569-

2    75.  Mr. Moen diagnosed drug-induced psychotic disorder with hallucinations (by

3    history); amphetamine and cannabis dependence; and psychotic disorder not

4    otherwise specified.  Tr. 570.  Mr. Moen assessed six marked and two moderate

5    mental limitations.  Tr. 570-71.  The ALJ rejected this opinion. Tr. 26.

6    In January 2011, Mr. Moen again evaluated Plaintiff.  Tr. 1411-17; *repeated*

7    *at* Tr. 1624-30.  Mr. Moen again assessed numerous marked mental limitations.

8    Tr. 1412-13.  The ALJ also rejected this opinion. Tr. 26.  The ALJ rejected these

9    opinions, that Plaintiff suffered marked mental health limitations, because the ALJ

10   found these assessments conflicted with the longitudinal record as a whole.  Tr. 26.

11   An ALJ may discredit an opinion that is unsupported by the record as a whole.

12   *Batson*, 359 F.3d at 1195.  The longitudinal record the ALJ relied on, as noted,

13   included in part the opinions of examining psychologist Dr. Dougherty (Tr. 630-

14   63, who noted Plaintiff had been able to work despite allegedly hearing voices),

15   reviewing psychologist Dr. Gentile (Tr. 636-52), who opined Plaintiff is

16   cognitively intact, capable of simple and well-learned complex tasks, and able to

17   have superficial public and coworker contact, and reviewing psychologist Dr.

18   Beaty, who agreed with her opinion (Tr. 709), and treatment provider Ms.

19   Rodriguez.  Tr. 486.  As indicated, in April 2008 Ms. Rodriguez found Plaintiff

20

admitted that he knew the voices were not real and he could control them by ignoring them. Tr. 486. The ALJ's reason was germane.

The ALJ additionally rejected Mr. Moen's opinions because he is an "other source," and the ALJ gave greater credit to the opinions of acceptable sources, including examining psychologist Dr. Dougherty. Tr. 26. Because an ALJ may properly give greater credit to acceptable medical source opinions than to "other source" opinions, *Molina,* 674 F.3d at 1111, the ALJ's reason again is germane.

### e. Lindsey Vaagen, MSW

In February 2010, treatment provider Ms. Vaagen evaluated Plaintiff. Tr. 719-726; *repeated at* Tr. 1631-1638. She diagnosed psychotic disorder, not otherwise specified, and cannabis abuse. Tr. 721. Ms. Vaagen assessed two marked and four moderate mental limitations. Tr. 722. The ALJ gave this opinion "very little weight." Tr. 26

The ALJ rejected Ms. Vaagen's opinion, that Plaintiff had marked mental health limitations, because the ALJ again found this assessment conflicts with the longitudinal record as a whole. *See, e.g.*, Tr. 26 (citing Tr. 572) (Mr. Moen opined Plaintiff had six marked limitations); Tr. 722 (Ms. Vaagen opined that Plaintiff had two marked limitations, in the ability to interact appropriately with the public, and respond appropriately to normal workplace pressures). An ALJ may reject opinions that are conclusory, brief, and unsupported by the record as a whole, or by

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 29

objective medical findings.  *Batson*, 359 F.3d at 1195.  The ALJ rejected this

opinion based on, as noted, the better supported opinions of consultative examiner

Dr. Dougherty, an acceptable medical source (Tr. 630-35[12]), and reviewing

psychologists Mary Gentile, Ph.D. (Tr. 636-53) and Edward Beaty, Ph.D. (Tr.

709).  The ALJ further relied on the records of other treatment providers.  For

example, the ALJ observed that in October 2007, about ten months after onset,

provider David Hibbs, ARNP, opined Plaintiff did not exhibit any unusual anxiety

or evidence of depression.  Tr. 25 (citing Tr. 552).  As another example, as noted,

in May 2008, treatment provider Ms. Rodriguez opined that Plaintiff's speech was

coherent and spontaneous; thoughts were concrete and organized; and, with respect

to auditory hallucinations, Plaintiff reported "I try to manage them and know they

---

[12] Dr. Dougherty, for example, noted Plaintiff was dressed neatly and appropriately;

there was no evidence of psychomotor agitation; Plaintiff was cooperative; and

mood and affect were positive.  Tr. 25 (citing Tr. 633).  Plaintiff recalled three

objects after five minutes; completed serial seven testing without error; completed

a 3-step command easily; had no difficulty following a conversation; and gave

appropriate, abstract explanations for common proverbs.  Tr. 25 (citing Tr. 633).

The ALJ correctly found that Dr. Dougherty's thorough examination results are

inconsistent with the extreme limitations assessed by Mr. Moen.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 30

are not real." Tr. 25 (citing Tr. 599). Additionally, in June 2008, Ms. Rodriguez

opined Plaintiff was "alert and oriented x3." Tr. 25 (citing Tr. 482). The ALJ is

correct that these records do not support the more dire limitations assessed by Mr.

Moen in 2007 nor Ms. Vaagen in 2010. Similarly, as noted, in January 2011, Mr.

Moen[13] again assessed numerous marked limitations.   Tr. 26 (citing Tr. 1412-13)

(opining, in part, that Plaintiff was markedly limited in the ability understand and

remember simple tasks). By contrast, Dr. Dougherty, an acceptable examining

source, opined that Plaintiff was able to carry out a three-step command with ease.

Tr. 633.[14]  This was a germane reason to reject the opinions.

———————————

[13] This opinion was not co-authored by Dr. Rodenberger, as Plaintiff contends.
ECF No. 14 at 13.  Rather, Dr. Rodenberger merely signed as a "Releasing
Authority Signature/Title (For Use by the Veteran's Administration) or Area of
Advanced Training for ARNP." Tr. 1415.

[14] The ALJ references Dr. Dougherty's opinion generally, Tr. 26, but the Court cites
specific portions of his opinion where applicable.  While the ALJ may not have
recited the magic words "I reject this opinion because . . .", such an incantation is
not required. *Magallanes*, 881 F.2d at 755.  As a reviewing court, we are not
deprived of our faculties for drawing specific and legitimate inferences from the
ALJ's opinion.  *Id.*

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 31

*f. Dr. Moon*

In March 2012 Dr. Moon examined Plaintiff, Tr. 1717-20, and assessed a GAF of 40.[15]  Tr. 1717-20.  Dr. Moon opined that Plaintiff had concentration problems, which she described as having a "hard time sustaining focus due to voices"; and Dr. Moon believed that a protective payee should be appointed.  Tr. 1717-18.  The ALJ gave this opinion little weight.  (Tr. 26).  Because Dr. Moon's opinion was contradicted by Dr. Dougherty, Tr. 630-635, the ALJ was required to provide specific and legitimate reason for rejecting it.  *Bayliss*, 427 F.3d at 1216.

First, the ALJ found there was no indication that Dr. Moon reviewed any records, other than other DSHS reports.  Tr. 26 (citing Tr. 1717-20).  "The extent to which a medical source is 'familiar with the other information in [the claimant's] case record' is relevant in assessing the weight of that source's medical opinion, *see* 20 C.F.R. §§ 404.1527(c)(6); 416.927(c)(6); however, it is but one factor the ALJ can consider in weighing a medical opinion.  *See* 20 C.F.R. §§

_____

[15] A GAF of 40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work . . .)."  *DSM-IV-TR,* 34.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 32

404.1527(c), 416.927(c); *see also Boghossian v. Astrue*, No. CV 10-7782-SP, 2011

WL 5520391, at *4 (C.D. Cal. Nov. 14, 2011) (stating that a limited review of the

record is not sufficient by itself to reject a treating physician's opinion." *Cox v.*

*Colvin*, No. 15-CV-00190, 2015 WL 8596436 at *13 (N.D. Cal. Dec. 14, 2015).

Dr. Moon's report indicates Plaintiff provided background information.  Tr.

1718.  The ALJ properly considered Dr. Moon's lack of familiarity with the rest of

the record when she weighed the opinion, because it was a relevant consideration

but not the sole reason.

Second, the ALJ found that Dr. Moon's opinion appeared to rely on

Plaintiff's unreliable self-report.  Tr. 26.  An ALJ is not required to accept a

medical opinion that is "based to a large extent on a claimant's self-reports that

have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041.  The

record supports the ALJ's finding that Dr. Moon's opinion appears to rely on

Plaintiff's unreliable self-report (*see infra*).  For example, Plaintiff similarly

testified that he is unable to work because he hears voices and they interfere with

his concentration.  Tr. 108-09.  Dr. Moon accepted Plaintiff's statements; however,

the daily activities Plaintiff reported to Dr. Moon are not consistent with this level

of impairment, lending credence to the ALJ's finding that Dr. Moon must have

relied on Plaintiff's unreliable self-reporting.  For example, Plaintiff told Dr. Moon

he got up at 6 a.m.; helped with household chores; walked for 30 minutes; napped

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 33

for an hour; watched television; went to appointments; and went to bed by nine

p.m. Tr. 1718.  This is inconsistent with Dr. Moon's assessed GAF of 40,

indicating major impairment in several areas.  Tr. 1718.  Last, Dr. Moon stated

Plaintiff "reported ongoing auditory hallucinations that interfere with his ability to

sustain focus and remember things," further indicating her reliance on Plaintiff's

unreliable report.  This was another specific, legitimate reason to give limited

weight to Dr. Moon's opinion.  *Tommasetti*, 533 F.3d at 1041.

### 3. Treating Nurses Campbell and Rutter and Physician's Assistant Spitler

Next, Plaintiff faults the ALJ for failing to properly credit the opinions of

three "other source" providers who treated Plaintiff's physical conditions.  As

noted, an ALJ need only provide germane reasons for rejecting the opinion of an

"other" source.  SSR 06-03p; 2006 WL 2329939 at *2; *Molina*, 674 F.3d at 1111.

### a. Kelli Campbell, ARNP

In January 2010, Plaintiff saw treatment provider Ms. Campbell for the first

time, for complaints of back pain.  Tr. 716-17.  Ms. Campbell evaluated Plaintiff

and diagnosed high blood pressure, diabetes, hyperlipidemia, and low back pain.

Tr. 716.  She noted Plaintiff complained of low back pain for thirty years.  Tr. 716.

At this initial appointment, Ms. Campbell assessed Plaintiff's limitations.  Tr. 716-

17.  She opined that Plaintiff would miss four or more days of work per month,

depending on the type of work performed; she noted Plaintiff had been sent for x-

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 34

rays and would be referred for physical therapy.  Tr. 26-27 (citing Tr. 717).  The ALJ assigned this opinion very little weight.  Tr. 26.

First, the ALJ rejected this opinion because it was not adequately supported with objective medical findings.  Tr. 26-27.  An ALJ may discredit an opinion that is unsupported by objective medical findings.  *Tonapetyan*, 242 F.3d at 1149.  Ms. Campbell's opinion is not based on objective findings, since she states that Plaintiff was referred for further testing, including x-rays; in addition, no findings are included in or attached to her opinion.  Tr. 717.

Second, the ALJ rejected Ms. Campbell's assessment because it appeared to rely on Plaintiff's unreliable self-report.  Tr. 26-27.  An ALJ may reject an opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible.  *Tommasetti*, 533 F.3d at 1041.  Ms. Campbell stated that if Plaintiff had a job that did not require heavy lifting, prolonged sitting, or frequent bending, "*he feels* he would be able to work 40 hours/week."  Tr. 717 (emphasis added).  By quoting Plaintiff, Ms. Campbell plainly relied on his unreliable self-report.  Moreover, Ms. Campbell did not rely on any objective testing.  The ALJ provided germane reasons for affording Ms. Campbell's opinion limited weight.

1

*b. Amelia Rutter, ARNP*

2    In October 2013, treatment provider Ms. Rutter evaluated Plaintiff.   Tr.

3    1990-91.  Ms. Rutter diagnosed chronic low back pain, uncontrolled diabetes, type

4    two, and "major depression with psychosis."  Tr. 1990.  She opined that Plaintiff

5    would need to lie down for one hour, three times a week, due to back pain.  Tr.

6    1990.  First, the ALJ rejected Ms. Rutter's opinion, because, like Ms. Campbell's,

7    it was unsupported by objective findings.  Tr. 26-27 (citing Tr. 1990-91).  An ALJ

8    need not accept any opinion that is unsupported by objective findings.

9    *Tonapetyan*, 242 F.3d at 1149.  In addition to opining that Plaintiff would need to

10   lie down for one hour, three times a week, due to back pain (citing Tr. 1990), Ms.

11   Rutter also opined that because Plaintiff's most recent x-ray was in 2010, further

12   imaging was needed (citing Tr. 1990-1991); in addition, Plaintiff had been referred

13   to physical therapy and needed to schedule an appointment (Tr. 1990).  Tr. 26-27.

14   The ALJ is correct that Ms. Rutter's opinion is not accompanied by any findings.

15        Second, the ALJ found that Ms. Rutter's opinion was based to a large extent

16   on Plaintiff's unreliable self-report.  Tr. 26-27.  An ALJ need not accept an opinion

17   that appears based on a claimant's self-reports that have been properly discounted

18   as incredible.  *Tommasetti*, 533 F.3d at 1041.  Here, Ms. Rutter indicated that she

19   had "just assumed care" of Plaintiff, and most of her information was from past

20   records, Tr. 1991, indicating that the rest of her information must have come from

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 36

1  Plaintiff's unreliable self-report.  The ALJ provided germane reasons for giving

2  Ms.  Rutter's opinion limited weight.

3         *c. Debbi Spitler, PAC*

4        In August 2013, treatment provider Ms. Spitler assessed a GAF of 44.[16]  Tr.

5  2055.  The ALJ gave this opinion little weight.  Tr. 27.  Because Ms. Spitler is a

6  physician's assistant, she is an "other source."

7        First, the ALJ found Ms. Spitler's assessed GAF of 44 was "an isolated

8  finding in the record as a whole."  Tr. 27 (citing Tr. 2055).  An ALJ may reject an

9  opinion that is unsupported by the record as a whole or by objective medical

10  findings.  *Batson,* 359 F.3d at 1195.  This statement is largely, but not completely,

11  accurate.  In March of 2012, examining psychologist Dr. Moon assessed a GAF of

12  40,[17] indicating even more serious symptoms or limitations.  *See* Tr. 1718.  Thus,

13  ────────────────

14  [16] A GAF of 44 indicates serious symptoms (e.g. suicidal ideation, severe

15  obsessional rituals, frequent shoplifting) OR any serious impairment in social,

16  occupational, or school functioning (e.g., no friends, unable to keep a job).  *DSM-*

17  *IV-TR*, 34.

18  [17] A GAF of 40 indicates some impairment in reality testing or communication

19  (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in

20  several areas, such as work or school, family relations, judgment, thinking, or

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 37

the ALJ's first reason is not *entirely* supported; however, the ALJ's reasoning is correct because the record overall does not support such extreme limitations.  For example, Ms. Spitler's assessed GAF of 44 is inconsistent with that of examining psychologist Dr. Dougherty, an acceptable source whose opinions are entitled to greater weight.  *See* Tr. 635 (Dr. Dougherty assessed a GAF of 65, indicating only mild symptoms or limitations).  As another example, the record overall shows that Plaintiff's reported functioning is inconsistent with more extreme limitations.  Tr. 25 (citing Tr. 384-90) (in April 2009, Plaintiff reported that he used public transportation, played light, non-contact sports daily, shopped, maintained a relationship with his girlfriend, handled money adequately, went to the park, and played video games).[18]

---

mood (e.g., depressed man avoids friends, neglects family and is unable to work; child frequently beats up other children, is defiant at home, and is failing at school).  *DSM-IV-TR*, 34.

[18] In addition, Plaintiff told Dr. Moon in March of 2012 his daily activities included helping with household chores (dishes, sweeping and mopping), walking for thirty minutes, and watching television; Plaintiff also reported he did not see himself working in the near future, "but stated that he may be able to do landscaping, a job that has limited contact with people."  Tr. 1718.

1    Second, the ALJ rejected Ms. Spitler's opinion because it was not

2  adequately supported with objective medical findings.  Tr. 26.  An ALJ may

3  discredit an opinion that is unsupported by objective findings.  *Batson*, 359 F.3d at

4  1195.  Here, Ms. Spitler assessed a GAF of 44, Tr. 2055, with no accompanying

5  findings, other than a notation that until substance use is better managed, "it will

6  likely be very difficult to get his psychotic symptoms under control."  Tr. 2056.

7    Third, the ALJ gave Ms. Spitler's opinion very little weight because it

8  appeared to be based on Plaintiff's unreliable self-report.  Tr. 26-27.  An ALJ is

9  not required to accept a medical opinion that is largely based on a claimant's non-

10  credible self-reports.  *Tommasetti*, 533 F.3d at 1041.  The lack of objective

11  findings supports the ALJ's inference that Ms. Spitler relied on Plaintiff's

12  unreliable self-report in assessing severe limitations, since there does not appear to

13  be another source for her opinion.  Tr. 26-27 (Tr. 2055).  The ALJ provided

14  germane reasons for rejecting the opinion.

15    *4. Dr. Eisenhauer and Dr. Covell*

16    Plaintiff faults the ALJ for ignoring the opinions of reviewing physicians Dr.

17  Eisenhauer and Dr. Covell.  ECF No. 14 at 14-17.  An ALJ may reject a non-

18  examining state agency physician's opinion if the opinions on which it is based

19  have been properly rejected.  *Downing v. Barnhart*, 167 F. App'x 652, 653 (9th

20  Cir. 2006), 2006 WL 373050 (unpublished) (the ALJ further determined that the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 39

1   state agency physician's opinion was unworthy of any persuasive value since it

2   was based solely on the unsupported CCP's report).

3        *a. Dr. Eisenhauer*

4        The ALJ did not discuss the certification for Medicaid, Tr. 770, completed

5   by reviewing psychologist R. Renee Eisenhauer, Ph.D., in February 2009. "[I]n

6   interpreting the evidence and developing the record, the ALJ does not need to

7   'discuss every piece of evidence.'" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d

8   1006, 1012 (9th Cir. 2003) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.

9   1998)).  An ALJ is not required to discuss evidence that "is neither significant nor

10  probative."  *Id.*

11       Dr. Eisenhauer noted Plaintiff's antipsychotic medication helped moderate

12  symptoms and allowed for basic functioning, but he opined that Plaintiff is "at risk

13  for decompensation without medication and with increased stress."  Tr. 770.  Dr.

14  Eisenhauer opined that in light of these factors, Plaintiff *may* meet Listing

15  12.03(C) (emphasis added).  He approved Plaintiff for GAX (state benefits) based

16  on Listing 12.03.  *Id.*  The certification indicates that Dr. Eisenhauer reviewed two

17  unnamed evaluations, the first in March 2008.  Tr. 770.  This appears to be Mr.

18  Clark's March 26, 2008 evaluation.  Tr. 578.  *Compare* Tr. 578 (Mr. Clark

19  diagnosed psychosis disorder, NOS, somatoform disorder, NOS, and rule out

20  schizophrenia, paranoid type); *with* Tr. 770 (Dr. Eisenhauer refers to same

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 40

1  diagnoses).  The second evaluation appears to reference Mr. Anderson's

2  September 23, 2008 evaluation, Tr. 734-39, since both Mr. Anderson and Dr.

3  Eisenhauer refer to Plaintiff's difficulty with tolerating frustration and anger.

4  *Compare* Tr. 736 *with* Tr. 770.  Because Dr. Eisenhauer's opinion was based on

5  Mr. Clark's opinion, Tr. 578, which the Court has already found the ALJ properly

6  rejected, and on Mr. Anderson's opinion, which the court has also already

7  determined was properly rejected, Dr. Eisenhauer's reviewing opinion was not

8  probative evidence.  An ALJ may reject an opinion which is based on other

9  opinions that the ALJ has properly rejected.  *See Haberman v. Colvin*, 13-CV-

10  05844-JRC, 2014 WL 3511124 at *9 (W.D. Wash. July 14, 2014) ("Dr. Harmon's

11  opinion was rejected properly as based on the lay opinions, which properly were

12  rejected by the ALJ.").

13      Moreover, Dr. Eisenhauer's provisional opinion that Plaintiff *may meet* a

14  Listing (he opined that Plaintiff "is at risk for decompensation without medication

15  and with increased stress"), Tr. 770, is simply not probative evidence that Plaintiff

16  meets the criteria of a listed impairment.  In addition, the effectiveness of

17  medication and treatment is a relevant factor in determining the severity of a

18  claimant's symptoms.  20 C.F.R. § 404.1529(c)(3); 416.929(c)(3); *see Warre v.

19  Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions

20  effectively controlled with medication are not disabling for purposes of

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 41

1  determining eligibility).  Consequently, the opinion that Plaintiff may

2  decompensate without prescribed medication and with increased stress fails to

3  establish that he meets a listed impairment.

4      As Dr. Eisenhauer's opinion was neither significant nor probative, the ALJ

5  was not required to discuss it.  Plaintiff contends that the ALJ should have weighed

6  the evidence differently and credited Dr. Eisenhauer's opinion, but it is the role of

7  the Commissioner, not this Court, to resolve conflicts in evidence.  *Magallanes*,

8  881 F.2d 747, 751 (9th Cir. 1989); *Richardson v. Perales*, 402 U.S. 389, 400

9  (1971).  If the evidence supports more than one rational interpretation, this Court

10 may not substitute its judgment for that of the Commissioner.  *Allen v. Heckler*,

11 749 F.2d 577, 579 (9th Cir. 1984).  If there is substantial evidence to support the

12 administrative findings, or if there is conflicting evidence that will support a

13 finding of either disability or nondisability, the Commissioner's finding is

14 conclusive.  *Sprague*, 812 F.2d at 1229-1230.  The ALJ's assessment of the

15 medical opinion evidence was supported by substantial evidence and must be

16 sustained.  *See Tackett*, 180 F.3d at 1098 (holding that if evidence reasonably

17 supports the Commissioner's decision, the reviewing court must uphold the

18 decision and may not substitute its own judgment).

19

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 42

1      *b. Dr. Covell*

2          In April 2012, Christmas Covell, Ph.D., completed a "Review of Evidence"

3  for the state.  Tr. 1905.  The ALJ did not address this one page report.  As noted,

4  an ALJ need not address evidence that is neither significant nor probative.  *See*

5  *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

6          According to reviewing psychologist Dr. Covell, the evidence she reviewed

7  consisted of Dr. Moon's opinion and Mr. Moen's 2011 opinion.  Tr. 1905.

8  Because this Court has already found that the ALJ properly rejected Dr. Moon's

9  and Mr. Moen's opinions, Ms. Covell's opinion was not probative.  *See Haberman*,

10 2014 WL 3511124 at *9 (W.D. Wash. July 14, 2014) (no error in the ALJ's failure

11 to credit fully the opinions of Dr. Harmon, whose opinions were based on the lay

12 examining source opinions which the ALJ was rejecting with germane rationale).

13 **B. Adverse Credibility Finding**

14         Next, Plaintiff faults the ALJ for failing to provide clear and convincing

15 reasons for discrediting his symptom claims.  ECF No. 14 at 17-20.

16         An ALJ engages in a two-step analysis to determine whether a claimant's

17 testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

18 determine whether there is objective medical evidence of an underlying

19 impairment which could reasonably be expected to produce the pain or other

20 symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 43

1 "The claimant is not required to show that [his] impairment could reasonably be

2 expected to cause the severity of the symptom [he] has alleged; [he] need only

3 show that it could reasonably have caused some degree of the symptom." *Vasquez*

4 *v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

5       Second, "[i]f the claimant meets the first test and there is no evidence of

6 malingering, the ALJ can only reject the claimant's testimony about the severity of

7 the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

8 rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

9 citations and quotations omitted). "General findings are insufficient; rather, the

10 ALJ must identify what testimony is not credible and what evidence undermines

11 the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v.*

12 *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility

13 determination with findings sufficiently specific to permit the court to conclude

14 that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and

15 convincing [evidence] standard is the most demanding required in Social Security

16 cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

17 *Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

18       In making an adverse credibility determination, the ALJ may consider, *inter*

19 *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

20 claimant's testimony or between his testimony and his conduct; (3) the claimant's

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 44

daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "are not entirely credible." Tr. 25.

### 1. Lack of Objective Medical Evidence

The ALJ found that the objective medical evidence did not support the degree of limitations alleged by Plaintiff. Tr. 25. Inconsistencies between a claimant's alleged limitations and medical evidence provide a permissible reason for discounting a claimant's credibility. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

First, the ALJ found the objective evidence did not support Plaintiff's claim of allegedly disabling back pain. Tr. 25. For example, the ALJ found that although Plaintiff alleged disabling back pain, objective imaging showed only mild degenerative changes in Plaintiff's mid to lower thoracic spine, Tr. 1109, and moderate degenerative changes in his lumbar spine. Tr. 25 (citing Tr. 1304). The

ALJ found, as another example, that a musculoskeletal examination in October

2007 was normal, with no tenderness nor joint deformity.  Tr. 25 (citing Tr. 552).

In May 2008, the ALJ found, Plaintiff was noted to ambulate independently.  Tr.

25 (citing Tr. 1080).  The ALJ found, as a further example, that at an examination

in October 2009, treatment provider Kelli Davidson, ARNP, opined that Plaintiff

was not in any apparent distress.  Tr. 25 (citing Tr. 505).  With respect to diabetes,

the ALJ found that in November 2007, Plaintiff had no significant diabetic

retinopathy, Tr. 461, and in December 2011, Plaintiff was compliant with

medication and had no diabetic-related foot ulcers or excessive thirst.  Tr. 25

(citing Tr. 1639).  Moreover, the ALJ significantly credited reviewing doctor

Norman Staley's 2009 opinion that Plaintiff was able to perform a range of

medium work.  Tr. 26 (citing Tr. 701-708).

The ALJ found these benign medical findings do not support Plaintiff's

allegations that he experiences ongoing pain and needs to lay down throughout the

day.  Tr. 25 (citing Tr. 110) (Plaintiff testified that he experiences back pain and

needs to lay down during the day for an hour).  Such inconsistencies between

Plaintiff's allegedly disabling physical limitations and the medical evidence

provided a permissible reason for discounting Plaintiff's credibility.  *See Thomas*,

278 F.3d at 958-959.

1    Similarly, the ALJ found Plaintiff's alleged mental limitations were not

2    supported by the medical evidence.  Tr. 25.  While an ALJ may not discredit a

3    claimant's testimony based solely on a lack of corroborating objective evidence,

4    the medical evidence is still a relevant factor in determining the severity of the

5    claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857.  For example,

6    the ALJ found that in October 2007, treatment provider David Hibbs, ARNP,

7    observed that Plaintiff did not exhibit any unusual anxiety or evidence of

8    depression.  Tr. 25 (citing Tr. 552).  The ALJ further found that in May 2008,

9    treatment provider Suzanne Rodriguez, MSW, opined Plaintiff was neither

10    homicidal nor suicidal, he reported that medication has been helpful in managing

11    his depression, and he was well groomed and dressed appropriately.  Tr. 25 (citing

12    Tr. 484).  In addition, Ms. Rodriguez opined in May 2008 that Plaintiff's speech

13    was coherent and spontaneous.  Tr. 25 (citing Tr. 599).  The ALJ further found

14    that, in June 2008, Ms. Rodriguez opined that Plaintiff was alert and oriented times

15    three.  Tr. 25 (citing Tr. 482).  Moreover, the ALJ found Dr. Dougherty opined in

16    2009 that Plaintiff completed a 3-step command easily.  Tr. 25 (citing Tr. 633).

17    The ALJ observed that this evidence does not support Plaintiff's alleged

18    difficulty concentrating.  Tr. 24 (citing Tr. 104 (Plaintiff testified that he has not

19    been able to work since 2007 because he hears voices); Tr. 107 (Plaintiff testified

20    that he cannot work because the voices "are intense);" Tr. 108-09 (Plaintiff

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 47

testified that with the voices, he loses concentration)).  The ALJ further found these allegations were refuted by Plaintiff's own statements.  Tr. 25 (citing Tr. 386-90 (in his function report, Plaintiff indicated that he needed no reminders and followed both written and spoken instructions well)).  The ALJ's reason is specific, clear and convincing.

### 2. Daily Activities

Next, the ALJ found that Plaintiff's daily activities were inconsistent with Plaintiff's allegedly disabling symptoms.  Tr. 25.  A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting.  *Orn*, 495 F.3d at 639; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his say engaged in pursuits involving the performance of physical functions that are transferable to a work setting.").  Here, the ALJ found, for example, Plaintiff reported in April 2009 that he completed his personal care, performed simple chores, and played light, non-contact sports daily.  Tr. 25 (citing Tr. 385-86, 388).  In the same function report, Plaintiff reported that he lived in a shelter with others; went outside frequently; used public transportation; shopped in stores; regularly visited the post office, library, and doctors' offices; got along well with others;

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 48

handled stress very well, went to the park on occasion; and had a girlfriend.  Tr. 25[19] (citing Tr. 384-90).  These activities are inconsistent with both Plaintiff's reported symptoms, *i.e.,* reported problems with concentration, and the activities indicate the ability to perform a range of activities transferable to a work setting.  The ALJ reasonably relied on Plaintiff's daily activities that were inconsistent with his symptom claims as a clear and convincing reason to discredit Plaintiff's symptom claims.

### 3. Lack of Compliance with Treatment

Third, the ALJ found Plaintiff's lack of compliance with medical treatment diminished his credibility.  Tr. 25.  When weighing credibility, the ALJ may properly consider unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.  *Tommasetti*, 533 F.3d at 1039.  The ALJ found, for example, that in November 2010, a treatment provider in the ER noted that Plaintiff's symptoms were "exacerbated by non-compliance."  Tr. 25

---

[19] The ALJ found Plaintiff also reported that he was able to adequately handle money; he watched movies and played card games daily; Plaintiff read the newspaper; played video games; possessed basic computer skills; followed both written and spoken instructions well; needed no reminders; and finished what he started.  Tr. 21, 25 (citing Tr. 386-90).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 49

(citing Tr. 1015).[20]  The ALJ further found Plaintiff was terminated from treatment for using methamphetamine and thereafter failing to contact the treatment agency. Tr. 21, 25 (citing Tr. 1914) (relapse); Tr. 1917 (termination from treatment).  There are many other records, not cited by the ALJ, that further demonstrate Plaintiff's non-compliance.  *See, e.g.,* Tr. 464-66 (Plaintiff was hospitalized in October 2008 for gastrointestinal bleeding; he admitted drinking); Tr. 672 (in July 2009, Plaintiff was hospitalized for abdominal pain; the diagnosis included alcoholism; Plaintiff admitted he knew that alcohol was "bad for his diabetes mellitus.").  The ALJ provided another specific, clear and convincing reason supported by the evidence. In sum, despite Plaintiff's arguments to the contrary, the ALJ provided several specific, clear, and convincing reasons for rejecting Plaintiff's testimony.  *See Ghanim*, 763 F.3d at 1163.

---

[20] *See, e.g*., Tr. 564 (in July 2008, Dr. Rodenberger noted an unexplained six month treatment gap); Tr. 721, 723 (in February 2010, Plaintiff told Ms. Vaagen that he smoked cannabis once in a while and was not currently receiving mental health treatment services).  These records are not cited by the ALJ but further support her reasoning.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 50

1

## CONCLUSION

2      After review, the Court finds that the ALJ's decision is supported by

3 substantial evidence and free of harmful legal error.

4      **IT IS ORDERED:**

5      1.  Plaintiff's motion for summary judgment (ECF No. 14) is **DENIED.**

6      2.  Defendant's motion for summary judgment (ECF No. 17) is **GRANTED**.

7      The District Court Executive is directed to file this Order, enter **Judgment**

8 **for Defendant,** provide copies to counsel, and **CLOSE** the file.

9      DATED this 27th day of March, 2017.

10                                                    _S/ Mary K. Dimke_
                                                      MARY K. DIMKE
11                                                    U.S. MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 51